UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| D. BOYD McCRACKEN and MICHAEL R. RAY, | CIVIL ACTION |
| Plaintiff(s), | Case No: 8:05-CV-423-T30-TGW |
| -vs- | Hon. Thomas G. Wilson, USMJ |
| CERTEGY CHECK SERVICES, INC., (f/k/a Equifax Check Services, Inc.), CERTEGY, INC., GARY M. WILBANKS (Personally and as Vice President of Certegy Check Services, Inc.), EQUIFAX, INC., EQUIFAX INFORMATION SERVICES, L.L.C., and DONALD T. HEROMAN, (Personally and as Vice-President/Manager of Equifax, Inc.), | |
| Defendant(s). | |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiff MICHAEL R. RAY, pro se, hereby provides the Court this Memorandum of Law in support of the Motion for Reconsideration of this Courts former Order of april 28, 2005; filed concurrently herewith.

1. Although the co-Plaintiff is in fact proceeding pro se and at the same time co-Plaintiff McCracken is proceeding in the same fashion; each are prosecuting their individual claims in this civil action. In that co-Plaintiff RAY is in fact a "jailhouse lawyer", it is previously founded that he in fact does have the right to not only act on "his own behalf", but additionally an [I]nmate acting as "Jailhouse Lawyer" has a fundamental right under the First Amendment

to provide legal assistance to other inmates, Newell v. Sasser, 64 F3d. 1416 (9th. Cir.1995); Wolff v. McDonnell, 418 U.S. 539, 41 L.Ed 935, 94 S.Ct. 2963 (1974); Johnson v. Avery, 393 U.S. 483, 21 L.Ed.2d. 718, 89 S.Ct. 747 (1969).

2. When another inmate provides legal "assistance", he is not in fact "representing" another inmate as an "advocate", nor is the party running "knight-errant" for the other inmate. In that both co-Plaintiffs' in this instant action have alleged violations under the Fair Credit Reporting Act, 15 USC § 1681, et seq., and being that both co-Plaintiffs are effected and involved in the exact same set of circumstances, the filing of the instant action as "Co-Plaintiffs" is proper and with merit. One could argue that if in fact these two co-Plaintiffs were never housed in the same facility (where the initial complaint was drafted) that co-Plaintiff RAY could not attempt to assist co-Plaintiff McCRACKEN in the pursuit of this action, however based on the facts and background of these proceedings, there is no factual basis to now cease or separate the case and require each individual party to separately prosecute this action.

3. Pro se prisoner defendants have right of access to adequate law libraries or assistance from persons trained in law. (emphises added), U.S. v. Kind, 194 F.3d. 900 (8th. Cir. 1999).

4. Pro se litigants pleadings are to be construed liberally and held to less stringent standard than formal pleadings drafted by lawyers; if court can reasonably read pleadings to state valid claim on which litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigants unfamiliarity with pleading re-

quirements, <u>McCormick v. City of Chicago</u>, 230 F.3d. 319 (7th.Cir 2000), <u>Boag v. MacDougall</u>, 454 U.S. 364, 70 LEd.2d 551, 102 S.Ct. 700 (1982), <u>Haines v. Kerner</u>, 404 U.S. 519, 30 LEd.2d. 652, 92 S.Ct. 594 (1972).

5. It is without denial that in fact co-Plaintiff McCRACKEN is the "less well versed" in this area of the law, he still has the right to receive information <u>and assistance</u> with these matters, so long as the parties are all well aware that each of them individually represents <u>themselves</u>.

6. Related to the issue of who may receive legal assistance from a jailhouse lawyer is the problem of who among the inmate population amy function as the jailhouse lawyer. The courts have stressed the right asserted in <u>Johnson</u>, supra was not the privilege of the jailhouse lawyer to practice law. Rather, it was the right of an inmate <u>to receive legal assistance from a fellow inmate</u>, see also <u>Bounds v. Smith</u> 430 U.S. 817 (1977); <u>Delgado v. Sheriff of Milwaukee County</u>, 487 F.Supp. 649 (E.D. Wis. 1980); <u>Rhodes v. Robinson</u>, 612 F.2d 766 (3rd.Cir. 1979)and <u>State v. Williams</u>, 595 P.2d.1104 (Kan. 1979).

7. If the situation regarding the matter of communication between the two co-Plaintiff parties is resolved (and this movant has no information indicating that the request will be denied) then the issue of "logistics" is actaully moot. According to the current Bureau of Prison regulations at 28 CFR Ch. V (7-1-04 ed.) §540.17 outlines the (apparently quasi-lax) restrictions placed upon inmates who desire to correspond regarding litigation. "An inmate may be permitted to correspond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family, <u>or is a party or witness in legal action in</u>

<u>which both inmates are involved</u> (emphises added.). Apparently the clearly stated regulation does not in fact differentiate between either co-defendants or other related litigants (as was stated by the Correctional Counselor at FCI Estill). Therefore, perhaps this court (in potentially granting this instant Motion) could issues a directive or Order to the Bureau of Prisons that these two parties are in fact co-Plaintiff's and in fact need to communicate to settle this matter once and for all.

8. Again, co-Plaintiff RAY has not filed this action on behalf of himself and another person. In fact he has filed this action on his own behalf and at the same time and in the same instance co-Plaintiff McCRACKEN has done the same. RAY is not attempting to bring suit on anyone else's behalf, consistant with the holdings in <u>Laird v. Tatum</u>, 408 U.S. 1 (1972). Additionally, a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, the merits of the case are irrelevant. <u>Flast v. Cohen</u>, 392 U.S. 83, 99 (1968).

9. When this matter was re-filed (after a previous dismissal in 2004 for "failure to prosecute"), the parties simply re-wrote the original complaint and then co-Plaintiff RAY in February of 2005 did in fact re-type the entire complaint. See Complaint filed in the matter of <u>McCRACKEN, et al., v. CERTEGY, et al</u> USDC MD Fl (Tampa) C/A # 8:04-cv-01536-EAK-TGW (dismissed 9/10/2004), Complaint at page #29 contains the actual signature of both of the parties. Additionally see the Federal Court Civil Cover Sheet which also contains the original signature of co-Plaintiff McCRACKEN.

10. It is noteworthy that in the original proceedings (in the

-5-

now dismissed case) that the Hon. E.A. Kovachevich granted the "plaintiffs' applications" to proceed in forma pauperis. (Order of July 7, 2004 Doc. #7). At the time these documents were granted and ifp status was recognized, the co-Plaintiff's were no longer housed at the same facility together.

11. It is apparent that the parties have maintained continual contact through other third parties. Attached hereto and made a part hereof is a copy of a February 26, 2005 letter (note) from LaShawn Rippy (the sister of co-Plaintiff McCRACKEN) to co-Plaintiff RAY advising RAY of the new address for McCRACKEN (which in turn RAY provided to the Clerk's Office).

Respectfully submitted,

By: _____
MICHAEL R. RAY, pro se
FCI Estill #40860-019
Post Office Box 699
Estill, South Carolina 29918

Dated: May 5, 2005

2/26/05

Hi 😊

I got your letter today asking for Daniel's address. I just sent you a letter from him - but not sure if it had his address. Anyway - he is in Florida - to stay.

Daniel McCracken #12993-023
Coleman FCI A2-74
Federal Community Complex Medium
P O Box 1032
Coleman FL
    33521

Take Care!
LaShaun





Bonnie and LaShawn Rippy
1717 Sword Dancer Drive
Virginia Beach, VA 23454

Michael Ray # 40860-019
PO Box 699
Estill SC 29918

23318+0699



MARY CASSATT USA 37

§ 540.15

not be sealed by the inmate and may be read and inspected by staff.

(c)(1) Outgoing mail from a sentenced inmate in a minimum or low security level institution may be sealed by the inmate and, except as provided for in paragraphs (c)(1)(i) through (iv) of this section, is sent out unopened and uninspected. Staff may open a sentenced inmate's outgoing general correspondence:

(i) If there is reason to believe it would interfere with the orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity;

(ii) If the correspondence is on a restricted correspondence list;

(iii) If the correspondence is between inmates (see § 540.17); or

(iv) If the envelope has an incomplete return address.

(2) Except for "special mail," outgoing mail from a sentenced inmate in a medium or high security level institution, or an administrative institution may not be sealed by the inmate and may be read and inspected by staff.

(d) The Warden may reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity. Correspondence which may be rejected by a Warden includes, but is not limited to, correspondence which contains any of the following:

(1) Matter which is nonmailable under law or postal regulations;

(2) Matter which depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption;

(3) Information of escape plots, of plans to commit illegal activities, or to violate Bureau rules or institution guidelines;

(4) Direction of an inmate's business (See § 541.13 Prohibited Act No. 408). An inmate, unless a pre-trial detainee, may not direct a business while confined. This does not, however, prohibit correspondence necessary to enable an inmate to protect property and funds that were legitimately the inmate's at the time of commitment. Thus, for example, an inmate may correspond

28 CFR Ch. V (7–1–04 Edition)

about refinancing an existing mortgage or sign insurance papers, but may not operate a mortgage or insurance business while in the institution.

(5) Threats, extortion, obscenity, or gratuitous profanity;

(6) A code;

(7) Sexually explicit material (for example, personal photographs) which by its nature or content poses a threat to an individual's personal safety or security, or to institution good order; or

(8) Contraband. (See § 500.1 of this chapter. A package received without prior authorization by the Warden is considered to be contraband.)

[50 FR 40109, Oct. 1, 1985, as amended at 56 FR 4159, Feb. 1, 1991; 62 FR 65186, Dec. 10, 1997]

§ 540.15 Restricted general correspondence.

(a) The Warden may place an inmate on restricted general correspondence based on misconduct or as a matter of classification. Determining factors include the inmate's:

(1) Involvement in any of the activities listed in § 540.14(d);

(2) Attempting to solicit funds or items (e.g., samples), or subscribing to a publication without paying for the subscription;

(3) Being a security risk;

(4) Threatening a government official; or

(5) Having committed an offense involving the mail.

(b) The Warden may limit a reasonable number persons on the approved restricted general correspondence list of an inmate.

(c) The Warden shall use one of the following procedures before placing an inmate on restricted general correspondence.

(1) Where the restriction will be based upon an incident report, procedures must be followed in accordance with inmate disciplinary regulations (part 541, subpart B of this chapter).

(2) Where there is no incident report, the Warden:

(i) Shall advise the inmate in writing of the reasons the inmate is to be placed on restricted general correspondence;

(ii) Shall give the inmate the opportunity to respond to the classification or change in classification, the inmate

560

---

Bureau of Prisons, Justice

has the option to respond orally or to submit written information or both; and

(iii) Shall notify the inmate of the decision and the reasons, and shall advise the inmate that the inmate may appeal the decision under the Administrative Remedy Procedure.

(d) When an inmate is placed on restricted general correspondence, the inmate may, except as provided in §§ 540.16 and 540.17:

(1) Correspond with the inmate's spouse, mother, father, children, and siblings, unless the correspondence is involved in an violation of correspondence regulations, or would be a threat to the security or good order of the institution;

(2) Request other persons also to be placed on the approved correspondence list, subject to investigation, evaluation, and approval by the Warden; with prior approval, the inmate may write to a proposed correspondent to obtain a release authorizing an investigation; and

(3) Correspond with former business associates, unless it appears to the Warden that the proposed correspondent would be a threat to the security or good order of the institution, or that the resulting correspondence could reasonably be expected to result in criminal activity. Correspondence with former business associates is limited to social matters.

(e) The Warden may allow an inmate additional correspondence with persons other than those on the inmate's approved mailing list when the correspondence is shown to be necessary and does not require an addition to the mailing list because it is not of an on-going nature.

§ 540.16 Inmate correspondence while in segregation and holdover status.

(a) The Warden shall permit an inmate in holdover status (i.e., enroute to a designated institution) to have correspondence privileges similar to those of other inmates insofar as practical.

(b) The Warden shall permit an inmate in segregation to have full correspondence privileges unless placed on restricted general correspondence under § 540.15.

§ 540.17 Correspondence between confined inmates.

An inmate may be permitted to correspond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family, or is a party or witness in a legal action in which both inmates are involved. Such correspondence may be approved in other exceptional circumstances, with particular regard to the security level of the institution, the nature of the relationship between the two inmates, and whether the inmate has other regular correspondence. The following additional limitations apply:

(a) Such correspondence at institutions of all security levels may always be inspected and read by staff at the sending and receiving institutions (it may not be sealed by the inmate); and

(b)(1) The appropriate unit manager at each institution must approve of the correspondence if both inmates are housed in Federal institutions and both inmates are members of the same immediate family or are a party or witness in a legal action in which both inmates are involved.

(2) The Wardens of both institutions must approve of the correspondence if one of the inmates is housed at a non-Federal institution or if approval is being granted on the basis of exceptional circumstances.

[50 FR 40109, Oct. 1, 1985, as amended at 61 FR 65204, Dec. 18, 1995]

§ 540.18 Special mail.

(a) The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail. The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail—Open only in the presence of the inmate".

(b) In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail.

561